DEVIN A. WEISBERG (SBN 230517)
WEISBERG LAW GROUP
~~1100 Wilshire Blvd. Ste. 2409~~
~~Los Angeles, California 90017~~
700 S Flower St., Suite 1000,
Los Angeles, CA 90017-4112
Telephone:   (213) 385-0022
Facsimile:   (213) 385-0033
Email: devinweisberg@gmail.com

DENISSE O. GASTÉLUM (SBN 282771)
GASTELUM LAW, APC
3767 Worsham Ave.,
Long Beach, CA 90808
Telephone: (213) 340-6112
Facsimile: (213) 402-8622
Email: dgastelum@gastelumfirm.com

*Attorney for Plaintiffs, Jose Trejo, et al.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JOSE TREJO, individually and as
successor in interest to JOSE
BANDA PICHARDO; SUSANA
BANDA, individually and as
successor in interest to JOSE
BANDA PICHARDO; and JOSE
TREJO and SUSANA BANDA, as
co-representatives of the Estate of
JOSE BANDA PICHARDO,

            Plaintiffs,

   v.

COUNTY OF IMPERIAL,
RAYMOND LOERA, ANDREA
KUHLEN, CALIFORNIA
FORENSIC MEDICAL GROUP and
DOES 2-10, inclusive, and R.
BANDA, a minor (nominal
defendant)

            Defendants.

Case No. 20-CV-1465 LAB (~~MSB~~DDL)

~~SECOND~~ **THIRD AMENDED COMPLAINT
FOR DAMAGES VIOLATION OF FEDERAL
CONSTITUTIONAL RIGHTS UNDER
COLOR OF STATE LAW (42 U.S.C. §1983):
~~(1) VIOLATION OF SUBSTANTIVE DUE
PROCESS RIGHT TO FAMILIAL
RELATIONSHIP; (2) DEPRIVATION OF
LIFE WITHOUT DUE PROCESS;~~ (1~~3~~)
DEPRIVATION OF CIVIL RIGHTS –
SUPERVISORY LIABILITY; (2~~4~~)
DEPRIVATION OF CIVIL RIGHTS,
*MONELL* VIOLATIONS; (3~~5~~) NEGLIGENCE;
(4~~6~~) VIOLATION OF GOVERNMENT CODE
§845.6 – FAILURE TO PROVIDE
IMMEDIATE MEDICAL CARE; (5~~7~~)
WRONGFUL DEATH**

## JURY TRIAL DEMANDED

Complaint Filed: July 29, 2020
Final Pretrial Conference: May 30, 2023
Trial Date: None

**COMES NOW** Plaintiffs JOSE TREJO, individually and as successor in

- 1 -

~~SECOND~~ **THIRD AMENDED COMPLAINT FOR DAMAGES**

interest to JOSE BANDA PICHARDO; SUSANA BANDA, individually and as successor in interest to JOSE BANDA PICHARDO; and JOSE TREJO and SUSANA BANDA, as co-representatives of the Estate of JOSE BANDA PICHARDO, and show this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.     As this action is brought under 42 U.S.C. §1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. §1331.

2.     As the incidents complained of in this action occurred in the County of Imperial, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. §1391(b)(2).

3.     As Plaintiff's claims brought under California State law arise out of the same transactions and occurrences, and out of a common nucleus of operative facts as the Plaintiff's federal question claims, this court has jurisdiction over the Plaintiff's California State law claims under its supplemental jurisdiction under 28 U.S.C. §1367, and otherwise pursuant to *Mine Workers v. Gibbs*.

4.     The Plaintiff has complied with the California Government Tort Claims Act. A government claim for damages was submitted in writing to the County of Imperial on March 25, 2019. The County denied the claim on January 30, 2020.

## GENERAL ALLEGATIONS

5.     Plaintiff, Jose Trejo, hereinafter referred to as "TREJO," is a natural person, who, at all times complained of in this action, resided in Palm Desert, State of California. TREJO is also the natural and legal father of decedent Jose Banda Pichardo, hereinafter referred to as "PICHARDO." TREJO brings this claim on behalf of himself and as successor in interest to PICHARDO, and, as applicable,

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

pursuant to California Code of Civil Procedure §§377.30 and 377.60.

6.   Plaintiff, Susana Banda, hereinafter referred to as "BANDA," is a natural person, who, at all times complained of in this action, resided in Palm Desert, State of California. BANDA is also the natural and legal mother of decedent PICHARDO. BANDA brings this claim on behalf of himself and as successor in interest to PICHARDO, and, as applicable, pursuant to California Code of Civil Procedure §§377.30 and 377.60.

7.   R. Banda, a minor, is a presumed natural child of PICHARDO born out of wedlock for which legal paternity was never established prior to PICHARDO's demise. R. Banda is currently not a Plaintiff to this action and has been named as a nominal defendant.

8.   Defendant Raymond Loera, hereinafter referred to as "LOERA" or "*"SHERIFF LOERA" was, at all times mentioned herein, the Sheriff of Imperial County and in charge of Imperial County Regional Adult Detention Facility (ICRADF) in Imperial County, the facility where PICHARDO resided at the time of his death. By California law, the Sheriff is answerable for the safekeeping of inmates in his custody. Cal.Gov. §§26605, 26610; Cal.Pen. §4006. SHERIFF LOERA was responsible for the management and control of all Imperial County Jails, was responsible for the administration of ICRADF; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the ICRADF, including custodial staff, counselors, advisors, nurses, doctors, physicians assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at ICRADF. He was responsible for the care, custody and control of all inmates housed in ICRADF. Pursuant to California law and his duties as the Sheriff of Imperial County, SHERIFF LOERA is sued in his individual capacity, as a supervisor for his own

~~SECOND~~ THIRD AMENDED COMPLAINT FOR DAMAGES

1   culpable action or inaction in the training, supervision or control of his

2   subordinates, or his acquiescence in the constitutional deprivations which this

3   Complaint alleges, or for conduct that showed reckless or callous indifference for

4   others. SHERIFF LOERA's affirmative conduct involves his knowing failure to

5   ensure enforcement of policies, rules or directives that set in motion a series of acts

6   by others which he knew or reasonably should have known would cause others to

7   inflict a constitutional injury to PICHARDO.

8   9.   Defendant, Andrea Kuhlen, hereinafter referred to as "KUHLEN" was, at all

9   times mentioned herein the Director of Imperial County Behavioral Health Services

10   and was in charge of ICRADF Health Care operations in Imperial County, the

11   facility where PICHARDO resided at the time of his death. KUHLEN is

12   responsible for the management and administration of health care services of the

13   ICRADF; for the selection, promotion, supervision, training, discipline and

14   retention of health care workers working within the ICRADF, including counselors,

15   nurses, doctors, physician assistants, health care staff and supervisors; and for the

16   implementation of health care policies and procedures at ICRADF. KUHLEN is

17   sued in her individual capacity, as a supervisor for her own culpable action or

18   inaction in the training, supervision or control of her subordinates, or her

19   acquiescence in the constitutional deprivations which this Complaint alleges, or for

20   the conduct that showed reckless or callous indifference for others. KUHLEN's

21   affirmative conduct involves her knowing failure to ensure enforcement of policies,

22   rules or directives that set in motion a series of acts by others which he knew or

23   reasonably should have known would cause others to inflict a constitutional injury

24   on PICHARDO.

25

26   10.9.  Defendant, County of Imperial, hereinafter also referred to as "COUNTY", is

27   a municipal entity located in the State of California; within the territorial

28

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

jurisdiction of this court. The Imperial County Sheriff's Office ~~and the Imperial County Behavioral Health Services are~~is, and at all times herein alleged were, agenc~~ies~~y of the County of Imperial.

~~11.~~10.Plaintiffs are presently unaware of the identities of DOES 2 through 10, inclusive, and will amend the complaint to add and to show the actual names of said DOE defendants, when ascertained by Plaintiffs.

~~12.~~11.Plaintiffs are informed and believe and thereon allege that Defendant CALIFORNIA FORENSIC MEDICAL GROUP (previously named in this action as DOE 1) and Defendants sued herein as DOES 2 through 10, inclusive, provided medical, mental health, and nursing care to pretrial and post-conviction detainees and prisoners in Imperial County Sheriff's Office correctional facilities, including the ICRADF, pursuant to a contract with the COUNTY OF IMPERIAL. ~~were employees of the County of Imperial, including but not limited to deputies and civilian staff of the Imperial County Sheriff's Office and employees of the Imperial County Behavioral Health Services, and were at all relevant times acting in the course and scope of their employment and agency.~~ Each Defendant is the agent of the other. Plaintiffs allege that each of the Defendants named as "DOE" was in some manner responsible for the acts and omissions alleged herein, and Plaintiffs will ask leave of this Honorable Court to amend the Complaint to allege such names and responsibility when that information is ascertained. At all relevant times mentioned herein, Defendant CFMG, and its employees, agents, officers, administrators, and representatives, were acting under the color of law. Courts have treated medical groups employed to provide prison medical services as local government entities for purposes of deliberate indifference claims. *See Carrea v. California,* No. EDCV 07-1148-CAS (MAN), 2009 WL 1770130, at *8 & n.5 (C.D. Cal. June 18, 2009) (collecting cases).

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

~~SECOND~~ THIRD AMENDED COMPLAINT FOR DAMAGES

13.12. Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants, and all individual Defendants were acting under the color of State law.

14.13. The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff.

## FACTUAL ALLEGATIONS

### A. From October 27, 2018 to February 23, 2019, Jose Banda Pichardo Was Denied Adequate Mental Health Care at Imperial County Jail Despite Obvious Signs of Suicidality Over a Four-Month Period.

15.14. On or about October 27, 2018, PICHARDO was arrested by police and booked into the Imperial County Regional Adult Detention Facility.

16.15. On information and belief PICHARDO completed a preliminary medical and psychological screening.

17.16. PICHARDO was diagnosed by his own physician, prior to incarceration, as suffering from depression, bipolar disorder, anxiety, and schizophrenia.

18.17. At the time of his arrest and incarceration on October 27, 2018, PICHARDO had been on a prescription drug regimen of hydroxyzine pamoate, buspirone, fluoxetine, olanzapine to treat his various mental health issues.

18.    Despite having undergone a preliminary medical and psychological screening at the time of booking, PICHARDO was refused his medication and was placed in

- 6 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

the general population without any designation regarding his medical condition that would alert those in charge of his care that he required monitoring, medical treatment, psychological treatment, and follow-up care.

19.    Soon after, PICHARDO noticed that his mental health was deteriorating because he was not taking his psychiatric medication.  PICHARDO asked his father, JOSE TREJO (hereinafter "TREJO"), to bring his medications to the ICRADF.

20.    Thereafter, on November 8, 2018, TREJO, PICHARDO'S father, tried to bring PICHARDO'S medication to the jail, advising the custody staff that his son was "very unwell" due to the "voices in his head." However, the deputies at the jail turned TREJO away and told him they could not give PICHARDO medication at the jail and that this was not a "Holiday Inn".

21.    On information and belief, PICHARDO at all times complained to the guards at the jail that he was hallucinating and needed his medication. Despite PICHARDO's request, the guards ignored him and failed to get him immediate medical attention, failed to provide any enhanced monitoring or supervision, and failed to alert the CFMG medical staff, which was hired by the County of Imperial to provide medical and mental health care to the inmates incarcerated at the ICRADF.Behavorial Health Services.

21.22.Understanding that his father was turned away, PICHARDO attempted to seek medical help from the medical staff at ICRADF.  On November 30, 2018, PICHARDO submitted a Telmate psych slip, requesting be seen by medical staff: "I can't sleep and my anxiety is getting worse… I find myself talking to myself a lot." Despite his request, PICHARDO was not triaged by the nurse until December 3, 2018, with a referral to see the psychiatrist. Unfortunately, PICHARDO's

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

December 3rd psych appointment was rescheduled due to "time constraints."

23. On December 4, 2018, CMFG employee, Miguel Duarte, R.N., completed a Mental Health Initial Assessment where he documented PICHARDO's prior psychiatric medication use (BuSpar) and anxiety diagnosis at Norco State Prison two months prior to this present incarceration. Notwithstanding, Nurse Duarte still noted denials regarding PICHARDO's interactions with mental health professionals.  An appointment was then made by Nurse Duarte for psychiatric intervention the following day on December 5, 2018.

24. PICHARDO's December 5th psych appointment was rescheduled due to "not enough time to be seen."

25. On December 8, 2018, PICHARDO once again submitted a Telmate psych slip, requesting to be seen by medical staff: "I need help with sleeping and with the voices I hear in my head … they don't let me sleep and I don't eat much. Outside I was getting some medication for the voices and it helped. I was able to sleep and the voices will go away."

26. PICHARDO's explicit requests for help were followed by weeks of cancelled psychiatric appointments.

27. PICHARDO was improperly housed throughout his incarceration. PICHARDO was evaluated for re-classification twice in December, and on both occasions, he was not deemed to qualify to be placed in a safety cell, despite his repeated requests for medication and psych care, his admissions to hearing voices, and a documented history of mental illness.

28. On December 9, 2018, while conducting a security inspection, Officer Nieves viewed inmate Banda Pichardo talking to himself. As a result, PICHARDO was moved to Foxtrot Upper 04, pending reclassification.

29. On the next day, December 10, 2018, PICHARDO's psych appointment was

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

1     rescheduled due to the psych nurse calling out sick.

2    30.Yet again, on December 12, 2018, PICHARDO's psych appointment was

3     rescheduled due to "time constraints."

4    31.PICHARDO was seen by Nurse Duarte on December 13, 2018 and a tele-psych

5     follow up appointment was again scheduled.

6    32.On December 15, 2018, PICHARDO was moved to a holding cell pending a

7     new housing assignment.

8    33.PICHARDO's concerning behavior continued.

9    34.On December 15, 2018, Officer Aguilar observed PICHARDO "on his knees

10     praying between the doorway and the upper tier walkway" and took him to be

11     seen by medical staff at the medical unit. PICHARDO was seen by medical staff

12     and was again not deemed to qualify for placement in a safety cell, but was

13     instead placed in a holding cell pending further re-classification. During his

14     inmate classification review, PICHARDO told Officer Aguilar that he hears

15     voices, and that the voices tell him that he is "disgusting." Despite this clear sign

16     of mental health issues, PICHARDO continued to be denied access to

17     psychiatric care.

18    35.On December 19, 2018, PICHARDO's tele-psych appointment was rescheduled

19     due to "time constraints."

20    36.And again, on December 26, 2018, PICHARDO's tele-psych appointment was

21     rescheduled due to "time constraints."

22

23    37.It was not until January 3, 2019 that PICHARDO was finally seen by

24     psychiatrist Dr. Fithian for a "new patient eval/telepsych consult" in response to

25     his initial request for psychiatric help made 34 days prior.

26    38.When questioned about his interactions with PICHARDO during the consult,

27     Dr. Fithian stated: "When I saw [PICHARDO], he denied hearing voices. Just

28

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

1   because someone says they hear voices doesn't give any credence to the fact that
2   they have a severe mental health disorder, disease, or effect." Notwithstanding,
3   Dr. Fithian stated that patients are not always forthcoming during psych
4   evaluations. Dr. Fithian recalled that during the consult PICHARDO "had no
5   indication of having a thought disorder. So he did not look to be schizophrenic,
6   schizoaffective, bipolar. He did not appear to have a major psychiatric disorder."
7   At this tele-psych appointment, Dr. Fithian did not document what medical
8   records or sick calls he reviewed nor what clinical report he received from the
9   mental health staff.  Upon information and belief, Dr. Fithian did not receive
10  PICHARDO's relevant medical records from his previous incarceration at
11  Norco State Prison.

12  39. For the next three weeks, PICHARDO's mental health continued to deteriorate.
13

14  40. On January 25, 2019, inmates informed custody staff that PICHARDO had not
15      eaten in five days. Inmate witness Dibble tried to help Banda Pichardo by
16      bringing him food "when [he] noticed he had not been eating for several days."
17

18  41. A medical appointment was scheduled for January 29, 2019 but was then
19      rescheduled due to time constraints.

20  42. On February 3, 2019, PICHARDO was brought to the medical unit for further
21      evaluation due to eating poorly and was deemed to be a "high risk for injury;"
22      still, he was not placed in a safety cell or on suicide watch.

23  43. On February 4, 2019, Officer Aguirre observed PICHARDO praying on his
24      knees in his cell.  Officer Aguirre took PICHARDO to be evaluated by medical,
25      where he subsequently stripped down naked in the middle of the medical unit.
26

27  44. At the medical unit, Dorina Armenta, R.N. evaluated PICHARDO.  She cleared
28

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

~~SECOND~~ THIRD AMENDED COMPLAINT FOR DAMAGES

him to return to his cell, and placed him on the psych list for the next available appointment. By this time, PICHARDO had been suffering with symptoms of his mental illness for nine weeks without relief.

45. On February 6, 2019, PICHARDO had his first tele-psych appointment with Dr. Salib, where he confirmed that he was hearing voices, believes people are out to get him, and that he was previously taking Buspar psychiatric medication. By this time, PICHARDO had lost 20 pounds. He had also refused recreation 18 times, specifically on the following dates: November 20, December 11, 14, 18, 21, 26, January 2, 4, 8, 11, 14, 22, 25, February 1, 3, 6, 7 and 2.

46. At the conclusion of the tele-psych appointment, Dr. Salib determined that although PICHARDO was indeed exhibiting symptoms of psychosis, he was a "low risk" for suicide. Dr. Salib prescribed PICHARDO Risperidone and scheduled a follow up with the clinic for six weeks out. Upon information and belief, there was no treatment plan created to address PICHARDO's level of observation or engagement in treatment for the next six weeks.

47. PICHARDO's mental health continued to deteriorate.

48. On February 7, 2019, PICHARDO was sentenced to three years in prison. Despite the fact that sentencing is considered a high-risk suicidality period, there was no additional follow-up by mental health staff after his sentencing and there continued to be delays in PICHARDO's ability to receive medical treatment to ensure he was doing okay.

49. On the same day of his sentence, PICHARDO refused his psychiatric medication then proceeded to refuse the psychiatric medication on February 9, 14, 19, 22 and finally on February 23, 2019 at 2:50 a.m. During this refusal, custody and medical staff approached PICHARDO's cell and yelled at him to

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

1   take his medication before walking away.

2   22.50.On or about February 23, 2019, at 4:00 a.m., PICHARDO was found in his

3   cell by jail staff with a sheet around his neck on one end and tied to the top of this

4   bunkbed on the other end. The prior welfare check had been conducted 92 minutes

5   prior at 2:33 a.m., which was 32 minutes past the mandatory Title 15 60-minute

6   welfare check requirement.

7

8   51.    PICHARDO died of suicide by hanging.

9   **B.  Fellow Inmates Observed Jose Banda Pichardo's Mental Health
    Deteriorating During His Four-Month Incarceration at Imperial
    County Jail.**

10

11

12   52.Several inmates observed PICHARDO engaging in suicidal behavior throughout

13      his incarceration.

14   53. Inmate witness Michael Jay Dibble witnessed PICHARDO's mental health

15      deteriorate significantly throughout the four months of his incarceration: "I

16      witnessed Banda's mental health decline during the four-month period that we

17      were both housed at H Tank. When Banda first arrived at the jail he seemed

18      somewhat mentally stable but as time passed he began exhibiting weird behavior

19      like talking to himself and saying a lot of off the wall stuff. Banda's mental

20      health appeared to get worse over time."

21

22   54.Inmate witness Dagoberto Conde made the following observations during

23      November and December of 2018: "Out of nowhere [Jose] started losing

24      it…[Jose] started doing weird shit like wiping his ass with his own hand."

25   55.Inmate witness Joshua Greene also observed PICHARDO "palming" his

26      medication (i.e., placing it in his hand and not swallowing it) on several

27      occasions.

28

- 12 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

56. Inmate witness Mr. Dibble stated that on another occasion "[he] witnessed [PICHARDO] walk naked to a pay phone, pick up the receiver and start speaking gibberish into the phone, having a conversation with himself for hours."

57. Per inmate witnesses Mr. Greene, Mr. Dibble, and Mr. Conde, PICHARDO often times stripped naked and prayed on the floor.

58. Mr. Conde worried that PICHARDO was trying to commit suicide because he would get "butt-naked and get on his knees and pray and then go look over the balcony like he was about to jump over." Mr. Conde said that this went on for "like a good month."

59. Mr. Greene too observed this suicidal behavior:  "I observed Banda Pichardo get naked and try to go over the second-floor balcony rail. I was worried he would jump or fall."

60. Upon information and belief, custody staff failed to notice these alarming behaviors because the County did not provide the Sheriff's Office with sufficient funds to equip the ICRADF with proper monitoring devices despite the fact that recording equipment is critical to ensuring the welfare of inmates at the jail.

61. Per inmate witness Mr. Conde and Mr. Dibble, some time in December of 2018, PICHARDO made a noose out of his bedsheets, which officers simply removed from his cell and did not report the noose incident to their supervisors. Mr. Conde recounted that Jose was "always sleeping, starving himself; he wouldn't eat."

62. Fellow inmate witnesses Mr. Greene and Mr. Dibble told correctional

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

1    officers that PICHARDO needed mental health care, but never saw anyone at

2    the ICRADF try to help him.

3    63. Inmate witness Mr. Dibble stated the following regarding the custody and

4        medical staff's indifference towards PICHARDO: "The things Banda was

5        saying were so off the wall and made no sense. I became very concerned for

6        Banda's health so I told an officer by the name of Bermudez that Banda

7        needed mental health care and needed attention, but I never saw anyone at

8        the jail try to help Banda. [...] In or around December of 2018, I recall that

9        the guards at the jail found a bedsheet tied up like a noose inside of Banda's

10       cell. I recall them removing the noose from Banda's cell. The guards did not

11       move Banda to another cell nor did they take any other action besides

12       removing the noose."

13   64. Likewise, inmate witness Mr. Greene stated the following regarding the

14       custody and medical staff's indifference towards PICHARDO: "On at least

15       two occasions, I observed Banda get naked and pray on the floor and then he

16       would stand in front of his cell or walkaround. The other inmates and I would

17       ask Banda to return to his cell and get dressed. We would tell the guards and

18       nurses about what had happened but they did nothing about it. [...] When I

19       saw that Banda was not responding, I asked a nurse for help. I do not recall if

20       the nurse did anything for him. [...] I was very worried about Banda. For the

21       entire two months that I was across from him, Banda would refuse to eat for

22       weeks at a time, palm his medication and not take them, he refused to

23       socialize with anyone and would just sit in his cell. I would tell the guards

24       and nurses that Banda needed help. Despite this, I never saw Banda receive

25       any help or extra care. [...] The other inmates and I used to sit in the sitting

26       area and talk when the staff was not around. We would all voice our concern

- 14 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

over Banda's behavior like not taking his meds, not eating, getting naked, and trying to go over the railing. We would all bring it up to the guards and nurses, but they just ignored us and did nothing about it. […] Most of the inmates were street smart and kept to themselves but most everyone tried to help Banda eat, take his medication, and ask nurses and guards to help him. They just ignored us."

**C. The County of Imperial and Sheriff Loera Had Notice that The Conditions In Which They Housed Jose Banda Pichardo Pursuant to County Policy, Procedure and Practice Placed Jose Banda Pichardo at Substantial Risk of Serious Harm.**

***i. Failure to Ensure Adequate Staffing.***

65. During the time that PICHARDO was incarcerated at ICRADF, and specifically during the time that PICHARDO's mental health deteriorated, there were staffing deficiencies amongst both the custody and medical staff.

66. The ICRADF Watch Commander Colby Stewart was critical of the fact that ICRADF was understaffed with custody personnel during the period when PICHARDO deteriorated. The Imperial County Sheriff's Office Deputy Chief, Jamie Clayton, too blamed the County's Chief Executive Officer for the inadequate staffing at ICRADF during the time of PICHARDO's incarceration in 2018 and 2019.

67. Upon information and belief, the CFMG Health Services Administrator (hereinafter "HSA") Linda Corfman believed that ICRADF was understaffed with medical staff during PICHARDO's incarceration.  Upon further information and belief, HSA Corfman believed  that PICHARDO was unable to obtain medical and mental health care for seven weeks (i.e., from the time that he, himself requested psychiatric medication on November 30, 2018 to the time

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

when he was finally seen by a psychiatrist on January 3, 2019) because of understaffing.  HSA Corfman blamed the understaffing at ICRADF on the COUNTY for not allowing enough psych hours in the medical services contract entered into by CFMG and the County.

### *ii. Failure to Provide Continuity of Care.*

68. Despite there being a Wellpath- CFMG policy that emphasizes the importance of ensuring that an inmate who was taking psychiatric medication before being incarcerated continues with that psychiatric medication, and despite having actual notice about PICHARDO's need to continue taking medication, PICHARDO was not given psychiatric medication until February 7, 2019 – more than three months after the County and CFMG received initial notice of PICHARDO's need for psychiatric medication.

69. In 2017, PICHARDO was incarcerated at Larry D. Smith Correctional Facility. Those custody records showed that PICHARDO was deemed to be suicidal at the booking on June 3, 2017, and again on September 30, 2017.  Upon information and belief, the mental health staff at ICRADF did not attempt to retrieve or review the records of this prior treatment before initiating or declining to provide treatment. Upon further information and belief, the mental health staff at ICRADF did not attempt to contact the family or prior facility where he received treatment to gather necessary information regarding PICHARDO's mental health issues prior to admission to ICRADF.

### *iii. Failure to Follow Medication Refusal Policies.*

70. Upon information and belief, there is no indication of the informed consent discussion, dictated by CFMG policy, which should have occurred between PICHARDO and the ICRADF medical staff when there is any refusal of

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

---

Formatted: Font: Bold, Italic

Formatted: Indent: Left:  0.25",  No bullets or numbering

Formatted: Indent: Left:  0"

Formatted: Font: Bold, Italic

Formatted: Indent: Left:  0.25",  No bullets or numbering

medication, to include the risks of refusal and effects on his mental health. Upon further information and belief, there is no documentation of the psychiatric provider being contacted regarding these refusals as stated should be done by CFMG policy.

71. Upon information and belief, HSA Corfman does not follow the CFMG refusal policy. Upon further information and belief, Nurse Franco also does not follow CFMG refusal policy regarding informing providers about inmate medication refusals nor does she follow the CFMG informed consent policy.

*iv. Failure to Follow Title 15 Minimum Jail Standards.*

72. According to Title 15 Minimum Jail Standards for Local Detention Facilities, custody staff are required to conduct welfare check at a minimum once every hour. It is well-established within the corrections and custody practices that conducting timely and proper safety checks is critical to the overall safety and security of the entire facility because inmates observe staff routines/ actions and when they know a staff member is not following proper and established procedures, they will take advantage of the situation.

73. During the relevant time period leading up to PICHARDO's suicide, and more specifically during the 11-hour period on February 22, 2019 and into February 23, 2019, there were nine instances that far exceeded the 60-minute window required by Title 15.  The times documented indicate the following: 102-minutes, 97-minutes, 102-minutes, 95-minutes, 101-minutes, 98-minutes, 101-minutes, 102-minutes, 144-minutes, and 92-minutes.

74. During the immediate time period that PICHARDO was found hanging, 92-minutes had elapsed between PICHARDO's last welfare check at 2:33 a.m. and when he was found hanging at 4:00 a.m.  The check exceeded the allotted 60-

- 17 -

minute mandate as directed by the State of California by 32 minutes.

75. Upon information and belief, Watch Commander Stewart is critical of the manner in which correctional staff conducted safety checks on the night of PICHARDO's suicide.

76. Two months after PICHARDO's suicide, a sampling of safety checks at ICRADF was reviewed by the Board of State and Community Corrections on April 28, 2019.  The audit revealed that safety checks throughout ICRADF were still not being routinely completed within the required 60-minute time frame of this regulation.

### *v. Failure to Provide Suicide Prevention Training.*

77. Suicide prevention training is critical in the correctional profession.  Staff should receive structured and scheduled training in order to understand the basic principles of suicidal ideations and what types of behavior they should look for when observing the inmate population.

78. The CFMG Suicide Prevention policy states: "Training for all custody and health services staff shall be provided to include identification and management of suicidal behavior in the jail setting including high-risk periods of incarceration, suicidal risk profiles, and recognition of verbal and behavioral cues that indicate potential suicide." The policy further provides: "Regularly scheduled training for all security and health services staff shall be provided to include identification and management of suicidal behavior in the jail setting including high-risk periods of incarceration, suicidal risk profiles and recognition  of verbal  and behavioral  cues that indicate potential suicide."

79. Upon information and belief, the custody staff at ICRADF were not trained on

- 18 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

Formatted: Font: Bold, Italic

Formatted: Indent: Left:  0.25",  No bullets or numbering

suicide prevention.  No custody personnel were present during any of the yearly suicide prevention trainings conducted by CFMG at ICRADF.  There is no documentation that shows any of the custody and medical staff at ICRADF attended suicide prevention training at least once a year within the immediate five years preceding PICHARDO's suicide.

***vi. Failure to Conduct Proper Investigations of In-Custody Deaths.***

80. Both the COUNTY and CFMG conducted an investigation regarding the in-custody death of PICHARDO.

81. In December of 2019, CFMG held a Quality Assurance/Peer Review regarding PICHARDO's suicide. Despite the fact that the "final review" was conducted 10 months after the suicide, and despite the medical and custody records having numerous notations regarding PICHARDO's deteriorating mental health, the CFMG death review indicated that PICHARDO had "no medical or mental health history."

82. The COUNTY's in-custody death investigation was conducted by Investigator Lopez.  The investigative report was devoid of any of the following information which was critical to the County's investigation into whether there were any failures on part of the custody and medical staff: (1) the custody staff failed to comply with the Title 15 60-minute welfare check mandatory requirement during the immediate time period that PICHARDO had been found hanging; (2) despite inmate witnesses informing Investigator Lopez that correctional officers had removed a noose from PICHARDO's cell in December of 2018, the custody records were devoid of any mention about this incident; (3) PICHARDO was found praying naked in his cell in February of 2019; (4) PICHARDO stripped down naked in the medical unit in February of 2019; (5) inmate witness

~~SECOND~~ THIRD AMENDED COMPLAINT FOR DAMAGES

observed PICHARDO trying to jump off the second floor as if trying to commit suicide; (6) inmate witnesses observed PICHARDO starving himself and losing a significant amount of weight such that inmates had to step in and feed him soup; and (7) PICHARDO heard voices that told him that he was 'disgusting.'

83. Investigator Lopez did not include any of the above critical pieces of information even though it was part of his job as an investigator to find out if the death was caused by acts and/or omissions on behalf of the custody and medical staff. Upon information and belief, Investigator Lopez does not like to include criticism of ICRADF staff in writing because "it is not my job to investigate staff on whether or not they did their job wrong or right."

### D. The County of Imperial, Sheriff Loera and CFMG Had Knowledge of the Inadequacy of its Suicide Prevention Procedures and Hazards Existing in the Imperial County Jails.

84. By the time that PICHARDO was moved to the Protective Custody Module, specifically Module H, within the Restrictive Housing Unit of the Imperial County Regional Adult Detention Facility, the COUNTY custody staff and the CFMG medical staff, and each of them, understood the cell where PICHARDO was housed on December 16, 2018 and until his death on February 23, 2019 was not suitable for an inmate who exhibited clear signs of psychosis and suicidal ideations because such cell contained suicide hazards and was unreasonably dangerous for housing inmates with identified mental health concerns.

85. Pursuant to its contract and related agreements with the COUNTY, CFMG took over and was solely responsible for the provision of medical and mental health services at the Imperial County Jails. Essentially, COUNTY turned over this important function to CFMG. Through their various agreements that were in place by the time Jose Banda Pichardo was taken into custody at the Imperial

- 20 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

County Jail, the CFMG medical staff  were to provide the following to the COUNTY at the Imperial County Jails:

a.   Staffing for the jail's medical and mental health units;

b.   Administrative structure, medical direction and operational oversight for the medical and mental health units;

c.   Oversight of the day-to-day operations of the health services programs at the jail;

d.   Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

e.   Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

f.   Development, implementation and revision policies, procedures and practices for the training of custodial staff at the jail;

g.   Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

h.   Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

- 21 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

86. COUNTY, SHERIFF LOERA, and CFMG had been on notice for years that their provision of medical and mental health treatment to inmates at the Imperial County Jails was inadequate and resulted in needless harm and death.

87. Further, Defendant COUNTY had a nondelegable constitutional duty to provide for PICHARDO's safety and serious medical needs while in its custody, and to the extent the COUNTY's contracted private medical provider(s) violated duties of care to PICHARDO, Defendant COUNTY is also liable.

88. The cells in Module H where PICHARDO was housed from December 16, 2018 to the time of his death on February 23, 2019, contained beds with sheets. These cells had attachment points that could be used for suicide by hanging, including ladders located on the bunkbeds.

89. The COUNTY, SHERIFF LOERA, and CFMG knew that placing PICHARDO in such a cell would pose a substantial risk of death or harm given the fact that COUNTY correctional officers had already removed a noose from PICHARDO's cell while he was housed in Module F sometime in late November of 2018 or early December of 2019, according to Inmate Witness Dagoberto Conde.

90. Prior to the death of PICHARDO, other persons in the custody of the COUNTY and supervised and cared for by CFMG had attempted suicide by similar, if not identical, means during their incarcerations at Imperial County Jails. The COUNTY custody staff and CFMG medical staff recognized that "sheets, blankets and clothing" were hazards as they "could be tied to the ladder rungs, stairs, air conditioning, heater ducts and plumbing."

91. The CFMG audit of the in-custody deaths including suicide attempts evidenced an alarming trend leading up to the death of Jose Banda Pichardo:

- 22 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

Formatted

    a. In 2015, there were two (2) in-custody inmate deaths and
       four (4) suicide attempts.

    b. In 2016, there were three (3) in-custody inmate deaths and
       twenty-seven (27) suicide attempts.

    c. In 2017, there were two (2) in-custody inmate deaths and
       nineteen (19) suicide attempts.

    d. In 2018, there were two (2) in-custody inmate deaths and
       eighteen (18) suicide attempts.

    e. In 2019, there was (1) in-custody inmate deaths and
       eight (8) suicide attempts.

92. As established in October 22, 2014, inmate Salazar hung himself using a bed sheet during the time that he was housed at Imperial County Jail after having been housed in a safety cell twice in a month then being cleared of suicidal ideations.

93. As established in *Estrada (Sandoval) v. Imperial County*, case number 3:17-cv-00326-BAS-RBM (S.D. Cal), specifically Docket Number 18, decedent Joceline Sandoval Garcia hung herself using a bed sheet during the time that she was incarcerated at Imperial County Jails.

94. On May 23, 2013, the federal class action *Jesse Hernandez, et al., v. County of Monterey, et al*., case number 5:13-cv-2354-PSG (N.D. Cal.), was filed against the County of Monterey and Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. alleging that the Defendants were deliberately indifferent to the medical and mental health needs of inmates housed at the Monterey County Jail, resulting in grievous and unnecessary suffering, harm, and death.

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

95. In 2013, experts were jointly retained by the County of Monterey and Defendant CFMG and the Plaintiffs in the class action lawsuit to evaluate the Monterey County Jail. These experts identified a variety of deficiencies in the provision of medical and mental health care at the Jail and the presence of hazards including the conditions in the lockdown units that put inmates at unacceptable risk of suicide and self-harm. CFMG participated in the hiring of said experts and, by the end of 2013, CFMG was presented with the findings of such experts.

96. On April 14, 2015, a federal court issued an order granting a motion for a preliminary injunction in the class action lawsuit that had been filed in 2013 against the County of Monterey and Defendant CFMG and other defendants named therein, *Jesse Hernandez, et al., v. County of Monterey, et al.*, case number 5:13-cv-2354-PSG (N.D. Cal.).

97. In the Order, and relevant to Defendant CFMG in this action, the Court found constitutional and statutory violations, and noted as follows:

   a. "The experts identified a variety of deficiencies and hazards, including: … that put inmates at unacceptable risk of suicide and self-harm;"

   b. "Plaintiffs provide significant evidence that Defendants' policies and practices constitute deliberate indifference to Plaintiffs' serious medical needs, particularly for the mentally ill."

98. The federal court in the *Hernandez* class action ordered Defendant CFMG and the County of Monterey to, among other things, prepare a plan to remedy the constitutional and statutory violations.

99. As early as June of 2016, Defendant TAYLOR FITHIAN, M.D. discussed the

**Formatted**

- 24 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

~~SECOND~~ **THIRD** AMENDED COMPLAINT FOR DAMAGES

implications of the *Hernandez* class action with the medical staff at Imperial County Jails. According to CFMG Staff Meeting Minutes, DR. FITHIAN apprised the CFMG medical staff of the *Hernandez* class action and the manner in which the  resulting consent decree would affect the health care services administered by CFMG medical staff at the COUNTY jails.

100.   Based on the aforementioned, the COUNTY, SHERIFF LOERA and CFMG knew of the dangers that posed a risk to PICHARDO's safety, yet disregarded these dangers resulting in PICHARDO's death.

23.

24.In 2017, the Imperial County Behavioral Health Services (ICBHS) and the Imperial County Sheriff's Office (ICSO) entered into a Memorandum of Understanding (MOU) in which several protocols were agreed upon regarding the assessment and treatment of inmates in the custody of the ICSO.

25.The MOU was effective as of July 1, 2017 and was to continue in effect until June 20, 2018 or until terminated pursuant to the MOU, whichever was earlier.

26.On information and belief, the MOU was either terminated or it expired on its own terms on or before June 20, 2018.

27.The MOU set forth, among other things, the following protocols:

a.  "The purpose of this MOU is to ensure that mental health services are provided to inmates with mental health needs in Imperial County Jail by establishing a written protocol to provided access to mental health

- 25 -
SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

care and establish systems for coordination between the Parties. This MOU will address two objectives: i. Specifications of type(s) of mental health services being provided pursuant to Assembly Bill ("AB") AB 109, funded Psychiatric Social Worker ("PSW"); and ii. Outline the responsibilities of ICBHS and ICSO in overseeing the work of the PSW [Psychiatric Social Worker]. The PSW is expected to perform the duties specified in the Scope of Work attached herein as Exhibit 'A' and incorporated by reference herein."

b. The Psychiatric Social Worker assigned to the Imperial County Jail, overseen clinically by ICBHS shall: Shadow CFMG staff on a weekly basis to familiarize self with possible future referrals; Conduct thorough psychological assessments of mental health needs for inmates either by requests from the population asking for mental health services or receiving referrals from staff for an inmate to be seen; Develop individualized treatment plans for inmates who will be seen for individual or group therapy; Conduct individual and group counseling by providing psychoeducation on mental health signs/symptoms, therapeutic interventions to promote treatment compliance, and implementing appropriate evidence-based models tailored to each inmate's unique needs; Chart and track referrals, number of inmates seen, and outcome measurements and provide this information on a regular basis to ICSO staff; Report significant observations of an inmate to CFMG staff to assist in CFMG's determination for suitability of booking; Conduct suicide risk assessments and intervene as needed by implementing the ASIST Model to decrease the risk for suicide; Monitor occupant's needs and treatment in mental health housing unit to assist them with a successful

- 26 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

reintegration into general population housing; Work in collaboration with the ICBHS Transitional Engagement and Supportive Services (TESS) staff at the county jail to ensure the offender's needs are assessed while incarcerated and that the offender is linked to appropriate community resources at the time of release to allow for a successful reentry into the community; Attend weekly Corrections Administration meetings to discuss special needs of the population; Attend monthly Community Corrections Partnership meeting and report on activities, success stories, and additional needs that are identified; As needed, assist the Sheriff Transportation Unit with coordination of court orders and issues regarding competency, in-patient placement, and follow up care; Track all BBS related hours on a weekly basis, obtain clinical supervisors' signature, and submit status of hours to ICBHS on a regular basis.

28. Despite these protocols being in place, they were either no longer implemented at the time of PICHARDO's incarceration at the ICRADF or were totally ignored by Defendants to PICHARDO's detriment.

**FIRST CAUSE OF ACTION**
**VIOLATION OF FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS – LOSS OF PARENT-CHILD RELATIONSHIP**
**[42 U.S.C. §1983]**
**(Against all Defendants, Except COUNTY)**

29. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 28, inclusive, above, as though set forth in full herein.

- 27 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

30. Plaintiff is informed and believes, and based on such information and belief, allege that Defendants acted with deliberate indifference for PICHARDO's reasonable security, in that they ignored and/or failed to reasonably monitor, to provide security, and to prevent PICHARDO from committing harm to himself; failed to seek immediately indicated access to mental and medical care for him; and ignored his serious but treatable mental condition. Due to Defendants' deliberate indifference to the serious nature and life threatening condition of PICHARDO, and their failure to timely intervene to provide reasonable security, monitoring and safety necessary in order to prevent his efforts to harm himself, PICHARDO suffered preventable serious injuries and harm by committing suicide.

31. PICHARDO was subjected to deprivation of rights by these Defendants, including DOES 2 through 10, inclusive, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of United States, State of California, which rights included, but are not limited to, privileges, and immunities secured to PICHARDO by the Fourteenth and Eight Amendments to the United States Constitution and laws of the United States, and particularly: a) his right to access to mental health and medical care and treatment for his serious but treatable condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

32. Defendants' unlawful customs, policies, practices, and actions described above, which caused the death of PICHARDO, were done intentionally and were done in a manner that constituted a deliberate indifference to

- 28 -

1  and reckless disregard of PICHARDO'S life and to said Child - Parent

2  Relationship, and constituted outrageous behavior that is shocking to the

3  conscience.

4

5  33. The death of PICHARDO also caused Plaintiffs TREJO and BANDA to

6  suffer the loss of PICHARDO's society, solace and comfort,

7  companionship, as well as caused him to suffer great mental, emotional

8  distress, pain and suffering in an amount to be shown at trial, in excess of

9  $15,000,000.00.

10  34. The death of PICHARDO also caused the nominal defendant, R. Banda,

11  to suffer the loss of PICHARDO's society, solace and comfort,

12  companionship, as well as caused him to suffer great mental, emotional

13  distress, pain and suffering in an amount to be shown at trial, in excess of

14  $15,000,000.00.

15

16  35. The death of PICHARDO, caused by Defendants, above-referenced, was

17  done maliciously and in reckless disregard of Plaintiff's constitutional

18  rights, sufficient for an award of punitive damages against all Defendants

19  (save COUNTY); all in an amount to be shown at trial, in excess of

20  $10,000,000.00.

21  **SECOND CAUSE OF ACTION**

22  **DEPRIVATION OF LIFE WITHOUT DUE PROCESS OF LAW UNDER**

23  **FOURTEENTH AMENDMENTS[1]**
    **[42 U.S.C. §1983]**

24  **(FEDERAL SURVIVALSHIP CLAIM VIA CAL.CIV.PROC. CODE §377.30)**

25  **(Against all Defendants, Except COUNTY)**

26

27  _____

28  [1] And as otherwise provided for under the United States Constitution as those other rights retained by the People (U.S. Const. Amend. 9)

- 29 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD **AMENDED COMPLAINT FOR DAMAGES**

36. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35, inclusive, above, as if set forth in full herein.

> **Formatted:** Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

37. Plaintiff is informed and believes, and based on such information and belief, allege that Defendants acted with deliberate indifference for PICHARDO's reasonable security, in that they ignored and/or failed to reasonably monitor, to provide security, and to prevent PICHARDO from committing harm to himself; failed to seek immediately indicated access to mental and medical care for him; and ignored his serious but treatable mental health condition. Due to Defendants' deliberate indifference to the serious nature and life threatening condition of PICHARDO, and their failure to timely intervene to provide reasonable security, monitoring and safety necessary in order to prevent his efforts to harm himself, PICHARDO suffered preventable serious injuries and harm by committing suicide.

38. PICHARDO was subjected to deprivation of rights by these Defendants and DOES 2 through 10, inclusive, acting under the color of State law and of statutes, ordinances, and regulations, customs and usages of the Law of the United States, State of California, which rights included, but are not limited to, privileges and immunities secured to PICHARDO by the Fourteenth and Eight Amendments to the United States Constitution and laws of the United States, and particularly: a) his right to access to mental health and medical care and treatment for his serious but treatable condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

39. Said denial of PICHARDO's right not to be deprived of his life without due process of the laws caused PICHARDO to suffer severe physical and mental and emotional pain, suffering, and injury, as well as lost wages / profits, the loss of his enjoyment of life, medical bills and expenses, and other special and general damages; all in an amount to be proven at trial, in excess of $15,000,000.00.

40. Moreover, as actions and omissions of said Defendants were done with deliberate indifference to his physical safety and to his very life, and were done intentionally, maliciously, recklessly, sadistically, oppressively, outrageously, and with deliberate indifference and reckless disregard of PICHARDO's constitutional rights, TREJO, BANDA, and nominal Defendant R. Banda are entitled to an award of punitive damages against said Defendants (save COUNTY), in an amount to be shown at trial in an amount in excess of $10,000,000.00.

THIRD FIRST CAUSE OF ACTION
VIOLATION OF CIVIL RIGHTS – SUPERVISORY LIABILITY
FAILURE TO ADEQUATELY TRAIN OFFICERS
[42 U.S.C. §1983]
(FEDERAL SURVIVALSHIP CLAIM VIA CAL.CIV.PROC. CODE §377.30)
(Against County Supervisorial Defendant RAYMOND LOERAAgainst all Defendants)

41. Plaintiff hereby alleges and incorporates by reference the allegations set

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

Formatted: Centered

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at:  0.5"

forth in paragraphs 1 through 40, inclusive, above, as if set forth in full herein.

101.    Plaintiff hereby alleges and incorporates by reference the allegations set forth in paragraphs 1 through 100, inclusive, above, as if set forth in full herein.

42.102.    Plaintiff is informed and believes and thereon alleges that Defendants SHERIFF LOERA KUHLEN, LOERA, CALIFORNIA FORENSIC MEDICAL GROUP and DOES 2 through 10, inclusive, acted with deliberate indifference to his responsibility and duty to PICHARDO, and his actions and/or inactions in failing to supervise his subordinates, including ICRADF Watch Commander Colby Stewart and Deputy Chief Jamie Clayton, to take adequate measure to protect inmates, such as PICHARDO, knew, or in the exercise of reasonable care, should have known of a given the history and propensity and pattern at the time of this incident for the ICRADF custody and medical staff employees of the Imperial County Regional Adult Detention Facility to fail to provide reasonable security, monitoring and supervision of inmates such as PICHARDO; to fail to comply in implementing policies and procedures ensuring the enforcement thereof; to fail and to train and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as PICHARDO; and that they provide prompt and competent access and delivery of mental health attention and intervention when inmates, such as PICHARDO, were having a mental health crisis requiring prompt intervention; all of which is set forth above in paragraphs 1 through 100. Defendant SHERIFF LOERA's s' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act

- 32 -

was a moving force which caused the violation of Plaintiff's constitutional rights.

43.103.   Plaintiff is informed and believes and thereon alleges that prior to the incident alleged herein, Defendant SHERIFF LOERA s KUHLEN, LOERA, CALIFORNIA FORENSIC MEDICAL GROUP and DOES 2 through 10, inclusive, acting under color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such committed similar acts of:

a. Failure to provide access to and delivery of mental health and medical care and treatment of inmates at Imperial County with known mental disabilities;

b. Failure to provide adequate housing and properly classify inmates in the Imperial County Jails so that they would have access to and delivery of indicated mental health and medical care;

c. Failure to provide adequate and reasonable monitoring and housing for inmates that present a risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

d. Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates;

e. Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and

- 33 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

imposes punishment for behavior resulting from or caused by their mental health disability.

44.104.   Plaintiff is further informed and believes and thereon alleges that Defendants KUHLEN, LOERA, CALIFORNIA FORENSIC MEDICAL GROUP and DOES 2 through 10, inclusive, SHERIFF LOERA knew, or in the exercise of reasonable care should have known, of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants and DOES 2 through 10, inclusive, had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct deputies, counselors, physicians and nurses who had a history of inappropriate conduct, and as a result PICHARDO was harmed in a manner threated by the pattern or practice.

45.105.   At all times herein mentioned, and prior thereto, Defendants had the duty to perform the following, and violated that duty:

a.  To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and State constitutional and statutory rights of inmates;

b.  To objectively investigate incidents of in-custody injury, deaths, suicides and suicide attempts, inadequate classification and contraindicated housing, and to take remedial action;

c.  To provide access to and delivery of mental and medical health care, intervention, treatment, follow-up, and attention to injured, ill or potentially suicidal inmates, the lack of which resulted in serious

- 34 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

injury or loss of life, and to provide access and delivery of competent mental and medical health care;

d. To periodically monitor an inmate's serious mental health and medical condition and suicide prevention, the lack of which may result in serious injury or loss of life;

e. To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

f. To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates with mental health disabilities at Imperial County Jails.

g. To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed, and not housed with or exposed to person with known dangerous propensities;

h. To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

i. To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by not condoning, ratifying, and/or encouraging the violation of PICHARDO's and other inmates' constitutional rights;

j. To periodically train custodial staff and counselors on understanding, recognizing, reporting, and responding to issues of inmates' mental health care and treatment; and

- 35 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

k.  Not to discriminate against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

46.106.    As a legal result of the conduct of Defendants SHERIFF LOERA KUHLER, LOERA, CALIFORNIA FORENSIC MEDICAL GROUP and DOES 2 through 10, inclusive, as described above, Plaintiff was damaged as alleged herein and as set forth above.

*(Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 106 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75")*

47.107.    As a direct and proximate result of Defendants' actions, above-referenced, PICHARDO was deprived of life, suffered great pre-death physical, mental and emotional pain and suffering, and Plaintiff was substantially physically, mentally and emotionally injured, and incurred medical and psychological costs/bills and expenses, funeral and burial expenses, incurred the loss of society, comfort, solace and their parent-child relationship with PICHARDO, and other special and general damages and expenses; all in an amount to be proven at trial; in excess of $15,000,000.00.

48.108.    The actions by said Defendants were done maliciously and in reckless disregard of Plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against Defendant SHERIFF LOERA s (save COUNTY) in favor of Plaintiff in an amount to be shown at trial, in excess of $10,000,000.00.

**FOURTH SECOND CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS – *MONELL* LIABILITY**
**[42 U.S.C. §1983]**

*(Formatted: Font: Italic)*

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

**(Against Defendant COUNTY)**

49.109.    Plaintiff hereby alleges and incorporates by reference the allegations set forth in paragraphs 1 through 48108, inclusive, above, as if set forth in full herein.

50.110.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant COUNTY, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of PICHARDO, engaged in the unconstitutional conduct and omissions, including (a) the failure to provide medical care through the lack of policies to ensure inmates receive regular care from psychiatrists, and (b) the failure to prevent harm through the Sheriff's Office's practice of inadequately monitoring mentally ill patients.

51.111.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant COUNTY, with deliberative indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of PICHARDO, failed to properly train government employees or adopt reasonable policies to provide mental health care to pretrial detainees.

52.112.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant COUNTY, with deliberative indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of PICHARDO, failed to adopt or implement policies despite the fact that it was highly predictable that such inaction would result in constitutional violations.

- 37 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

**Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 106 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

53.113.   Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned,  the need for better policies or training was so obvious, and the inadequacy was so likely to result in the violation of PICHARDO's constitutional rights that the omissions of the policymakers of the County were deliberately indifferent to the need.

54.114.   Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, the facts available to the County policymakers put them on actual or constructive notice that the failure to adequately train employees, the failure to implement policies to ensure inmates receive regular care from psychiatrists, and the Sheriff's Office's practice of inadequately monitoring mentally ill patients was substantially certain to result in the violation of the constitutional rights of its citizens.

55.115.   At all times herein mentioned, COUNTY and its Sheriff's Office and Behavioral Health Services authorized and ratified the wrongful acts of the ICRADF custody and medical staffindividual Defendants. The individual Defendants' wrongful conduct was the result of policies, practices and customs to subject inmates at Imperial County Jails to unconstitutionally provide inadequate treatment for inmates with mental health conditions; permit and promote unsafe conditions for inmates leading to a heightened risk of suicide; and cover-up incidents of unconstitutional behavior by members of its Sheriff's Office custody and medical staff and Behavioral Health Services.

56.116.   The actions and inactions of the Imperial County Sheriff's Office and Imperial County Behavior Health Services were known or should have been known to policy makers responsible for COUNTY, and occurred with deliberate indifference to either the recurring constitutional

- 38 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

57.117.   The actions of Sheriff's Office custody staff ~~and the Behavioral Health Services staff set froth~~ and medica staff set forth herein were a motivating force behind the violations of Plaintiff's and PICHARDO's constitutional rights as set forth in this complaint.

58.118.   As a direct and proximate result of COUNTY's acts and omissions, condoning, encouraging, ratifying and deliberately ignoring the pattern and practice of Defendants and DOES 2 through 10, inclusive, and omissions, Plaintiff sustained injury and damages as proved.

59.119.   As a result of Defendants', and each of their, violations of Plaintiff's and PICHARDO's constitutional rights as set forth herein, Plaintiff was damaged as alleged above.

120.   The unconstitutional actions and/or omissions of the COUNTY, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and/or CFMG, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendant COUNTY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and its Sheriff's Office:

  a.  To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical and psychiatric needs, requiring such inmates in crisis to remain untreated

- 39 -

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 120 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

in jail instead of providing for their emergency medical needs;

b.  To deny sufficient mental health staff and training at Imperial County Jails to ensure inmates had adequate psychiatric treatment.  CFMG did not staff a psychiatrist on site at Imperial County Jail. Instead, CFMG provided a remote psychiatrist who saw patients only via video conferencing—called "telepsychiatry." The custom of the remote psychiatrist was to not evaluate the patient's medication records and to not independently review the nurses' notes in preparation for the patient consultations. The nurses selected what limited medical documentation, if any, to provide the remote psychiatrist.

c.  To allow and encourage deputies doing regular cell checks on inmates to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY's written policies and state law;

d.  To allow and encourage deputies to fail to document observations made by other inmates and relayed to the deputies regarding another inmate's condition and status, in violation of the COUNTY's written policies and state law;

e.  To allow and encourage inadequate and incompetent medical and mental health care for jail inmates and arrestees;

f.  To contract for obviously inadequate medical and psychiatric care for jail inmates and arrestees, including creating financial incentives for jail and CFMG staff not to send inmates with emergency medical needs to a hospital;

- 40 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

g.  To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical and psychiatric condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

h.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed persons or persons in medical crisis;

i.  To cover up violations of constitutional rights by any or all of the following:

   i.   By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical and psychiatric care at the jail;

   ii.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by jail staff and CFMG employees; and

   iii. By allowing, tolerating, and/or encouraging jail and CFMG staff to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, sheriff's office personnel, and CFMG staff at the jail whereby an officer or member of the sheriff's office, or CFMG

- 41 -

staff does not provide adverse information against a fellow officer, or member of the SCSO, or CFMG staff;

k.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of Decedent, of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.'

121.   Defendant COUNTY, through their employees and agents, and through their policy-making supervisors, including SHERIFF LOERA, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the ICRADF custody and medical staff, with deliberate indifference to Plaintiff's, Decedent's, and others' constitutional rights, which were thereby violated as described above.

122.    The unconstitutional actions and/or omissions of the ICRADF custody and medical staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and its Sheriff's Office, including Defendant SHERIFF LOERA. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and the Imperial County Sheriff's Office, and that such policymakers have direct knowledge of the fact that the death of Jose Banda Pichardo was the result of deliberate indifference to his serious medical needs. Notwithstanding this knowledge, the authorized policymakers within the COUNTY, and its Sheriff's Office, have approved of the conduct and decisions of the ICRADF custody and medical staff, as described above, and have made a

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

1  deliberate choice to endorse such conduct and decisions, and the basis for them, that

2  resulted in the death of Jose Banda Pichardo. By so doing, the authorized

3  policymakers within the COUNTY and its Sheriff's Office, have shown affirmative

4  agreement with the ICRADF custody and medical staff and have ratified the

5  unconstitutional acts of the ICRADF custody and medical staff, as described above.

6  Furthermore, Plaintiff is informed and believes, and thereupon alleges, that

7  Defendant SHERIFF LOERA, and other policy-making officers for the COUNTY

8  were and are aware of a pattern of misconduct and injury caused by COUNTY law

9  enforcement officers and CFMG employees similar to the conduct of Defendants

10  described herein, but failed to discipline culpable law enforcement officers and

11  employees and failed to institute new procedures and policy within the COUNTY.

13  123.   The aforementioned customs, policies, practices, and procedures; the

14  failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

15  investigate, and discipline; and the unconstitutional orders, approvals, ratification,

16  and toleration of wrongful conduct of Defendant COUNTY were a moving force

17  and/or a proximate cause of the deprivations of Decedent's clearly established and

18  well-settled constitutional rights in violation of 42 U.S.C. § 1983.

19  124.   Defendants subjected Decedent to their wrongful conduct, depriving

20  Decedent of rights described herein, knowingly, maliciously, and with conscious

21  and reckless disregard for whether the rights and safety of Decedent, Plaintiff and

22  others would be violated by their acts and/or omissions.

### ~~FIFTH~~ THIRD CAUSE OF ACTION
### NEGLIGENCE
### (Against ~~All Defendants, DOES 1 through 10, Except COUNTY~~ Defendant CFMG)

- 43 -

~~SECOND~~ THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

60.125.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59124, inclusive, above, as if set forth in full herein.

61.126.   Defendants and DOES 2 through 10, inclusive, had a duty to provide reasonable security and render access and delivery of mental and medical care, treatment and/or emergency services to PICHARDO for his mental health condition but breached their duty and were negligent in the performance of their duties and this negligence caused the death of PICHARDO.

62.127.   Defendants and DOE supervisors 2 through 10, inclusive, acting within the course and scope of their employment with Sheriff's Office custody staff and the CFMG medical staff, and Behavioral Health Services staff had a duty to assure the competence of their employee/agents Defendants and DOES 2 through 10, inclusive, but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant deputies, counselors, physicians and/or employees and/or agents. The breach of duty of careful selection, hiring, training review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to person such as PICHARDO.

63.128.   The individually named Defendants breached their duty of care to observe, report, monitor and provide reasonable security regarding PICHARDO's condition and failed to prevent his suicide.

64.129.   As a direct and legal result of the aforesaid negligence, carelessness

- 44 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 120 + Alignment: Left + Aligned at: 0.25" + Indent at:  0.5"

1    and unskillfulness of Defendants, and each of them, and as a result of their

2    breach of duty of care to PICHARDO, he was injured due to a serious but

3    treatable mental health condition and Plaintiff has suffered damages as

4    alleged above.

5
6    65.130.   As a legal result of the aforesaid negligence and unskillfulness of

7    Defendants, PICHARDO's trauma and injuries and/or suicidal ideation

8    condition did not receive timely, appropriate and indicated intervention and

9    treatment and his condition worsened and resulted in his suicide, and he

10   suffered serious injury and harm as a legal cause of the negligent conduct of

11   Defendants, thereby causing damage as alleged above.

12                            SIXTH FOURTH CAUSE OF ACTION
13        NEGLIGENCE - VIOLATION OF CALIFORNIA GOV'T CODE §845.6
14                         (Against all Defendant COUNTYs)

15   66.131.   Plaintiff hereby realleges and incorporates by reference the allegations
16   set forth in paragraphs 1 through 65130, inclusive, above, as if set forth in
17   full herein.

18
19   67.132.   Defendants and DOES 2 through 10, inclusive, knew or had reason to

20   know that PICHARDO needed immediate medical care because PICHARDO

21   told them repeatedly that he was having hallucinations and PICHARDO's

22   father JOSE TREJO brought PICHARDO's medication to the jail and

23   pleaded with the deputies to give PICHARDO his medication only to be sent

24   away and told that "this was not a Holiday Inn".

25
26   68.133.   Despite PICHARDO alerting Defendants and DOES 2 through 10,

27   inclusive, about the hallucinations and TREJO's pleading, they failed to take

28   reasonable action to summon medical care for PICHARDO.

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

- 45 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

---

**Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 120 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

69.134.   As a result of the foregoing, Defendants and DOES 2 through 10, including but not limited to representatives of Sheriff's Office custody staff and Behavioral Health Services staff and California Forensic Medial Group staff knew or had reason to know that PICHARDO needed immediate medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition monitored. The failure to provide immediate medical care and mental health care, where his health and mental condition were deteriorating, proximately caused his suicide.

70.135.   Defendants and DOES 2 through 10 were acting within the scope of their employment with the COUNTY when PICHARDO was exhibiting obvious signs of psychosis and they failed to take reasonable action to summon medical care in violation of Government Code §845.6. Therefore, the COUNTY is vicariously liable for the actions of its employees.

136.      As a legal result of the aforesaid negligence and unskillfulness of Defendants, PICHARDO's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate and indicated intervention and treatment and his condition worsened and resulted in his suicide, and he suffered serious injury and harm as a legal cause of the negligent conduct of Defendants, thereby causing damage as alleged above.

137.      Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code sections 815.2 and 845.6.

71.

- 46 -

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

**~~SEVENTH~~ FIFTH CAUSE OF ACTION**
**Wrongful Death (Cal.Civ.Proc. Code §377.60)**
**Under California State Law**
**(Against ~~All~~ Defendants COUNTY and CFMG)**

~~72.~~138.   Plaintiff hereby alleges and incorporates by reference the allegations set forth in paragraphs 1 through ~~67~~ 137 inclusive, above, as if set forth in full herein.

> **Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 120 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

~~73.~~139.   As shown above, Plaintiffs TREJO and BANDA are the natural and legal parents and heirs of PICHARDO, and are entitled to inherit from PICHARDO via intestate succession under California State law.

~~74.~~140.   To the extent that nominal Defendant, R. Banda, a minor, is the natural and legal child and heir of PICHARDO, he would be entitled to inherit from PICHARDO via intestate succession under California State law.

~~75.~~141.   Also as shown above, Defendants failed to provide PICHARDO with reasonable security, in that they ignored and/or failed to reasonably monitor, to provide security, and to prevent PICHARDO from committing harm to himself; failed to seek immediately indicated access to mental and medical care for him; and ignored his serious but treatable mental health condition, which resulted in PICHARDO committing suicide.

~~76.~~142.   As a direct and proximate result of Defendants' actions, above-referenced, Plaintiffs TREJO and BANDA lost the solace, society and comfort of PICHARDO, and Plaintiff incurred medical and psychological costs/bills and expenses, loss of possession, use and enjoyment of, and damage to personal and real property, incurred the loss of society, comfort, solace and their parent-child relationship with PICHARDO; all in an amount

- 47 -

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

to be proven at trial; in excess of $15,000,000.00. Moreover, Defendants are liable to Plaintiff pursuant to Cal.Civ. Proc. Code §377.60 in an amount in excess of $15,000,000.00.

77.143.   As a direct and proximate result of Defendants' actions, above-referenced, nominal Defendant, R. Banda, lost the solace, society and comfort of PICHARDO, and incurred medical and psychological costs/bills and expenses, loss of possession, use and enjoyment of, and damage to personal and real property, incurred the loss of society, comfort, solace and his parent-child relationship with PICHARDO; all in an amount to be proven at trial; in excess of $15,000,000.00. Moreover, Defendants are liable to Plaintiff pursuant to Cal.Civ. Proc. Code §377.60 in an amount in excess of $15,000,000.00

78.144.   The actions by Defendants were done maliciously and oppressively, and constituted despicable conduct, sufficient for an award of punitive/exemplary damages against Defendants (save COUNTY) in an amount to be shown at trial, in excess of $10,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth:

1. For compensatory and general damages in an amount according to proof;
2. For past and future medical, incidental, and service expenses according to proof;
3. Punitive and exemplary damages, according to proof;
4. For pre- and post-judgment interest on all damages as allowed by law;
5. For costs of suit incurred herein;
6. For attorney fees under existing law; and

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

SECOND THIRD AMENDED COMPLAINT FOR DAMAGES

1       7.  For such other and further relief as the Court may deem just and proper.

2

3

4    DATED: ~~January 25, 2021~~February ____, 2023    **WEISBERG LAW GROUP**

5

6                                 By:    /S/DEVIN WEISBERG

7                                     Devin Weisberg
                                      Attorney for Plaintiffs

8

9

10   DATED: February ____, 2023    **GASTELUM LAW, APC**

11   _____    By:    /S/DENISSE O. GASTÉLUM, APC

12   _____    Denisse O. Gastélum
     _____    Attorney for Plaintiffs

13

14   **JURY DEMAND**

15      Plaintiffs demand trial by jury on all issues so triable.

16   DATED: ~~January 25, 2021~~February ____, 2023   **WEISBERG LAW GROUP**

17                                By:    /S/DEVIN WEISBERG

18                                    Devin Weisberg
                                      Attorney for Plaintiffs

19

20

21   DATED: February ____, 2023    **GASTELUM LAW, APC**

22                                By:    /S/DENISSE O. GASTÉLUM, APC

23                                Denisse O. Gastélum
                                  Attorney for Plaintiffs

24

25

26

27

28

Formatted: Font: 12 pt
Formatted: Normal

DEVIN WEISBERG
ATTORNEYS AT LAW
LOS ANGELES

- 49 -