UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TREJO, et al.,<br><br>                           Plaintiffs,<br><br>v.<br><br>COUNTY OF IMPERIAL, et al.,<br><br>                           Defendants. | Case No.: 20-cv-1465-DDL<br><br>**ORDER GRANTING CALIFORNIA FORENSIC MEDICAL GROUP'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[Dkt. No. 192]** |

Before the Court is California Forensic Medical Group, Inc.'s ("CFMG") Motion for Partial Summary Judgment on the issue of punitive damages. For the reasons set forth below, the motion is **GRANTED**.

## I.

## BACKGROUND

Jose Banda Pichardo ("Pichardo") died by suicide while in custody in the Imperial County Regional Adult Detention Facility ("Imperial County Jail" or "ICRADF"). *See generally* Dkt. No. 175. As alleged in Plaintiffs' Fourth Amended Complaint for Damages ("FAC"), Pichardo was booked into the Imperial County Jail on October 27, 2018, and remained there until his death on February 23, 2019. *Id.* at ¶¶ 13-50. Pichardo suffered from various mental health conditions that were treated with medications before his

detention. *Id.* at ¶¶ 15-16. Plaintiffs allege that, while at the Imperial County Jail, Pichardo was denied access to his medications, and his repeated requests to be seen by a mental health care provider were not answered, mainly because scheduled appointments were routinely cancelled before Pichardo could receive treatment. *Id.* at ¶¶ 17-50. Plaintiffs further allege Pichardo decompensated rapidly and alarmingly during his detention, culminating in his suicide. *Id.*

Plaintiffs Jose Trejo and Susana Banda are Pichardo's parents who each sue in their individual capacities and as successors in interest to Pichardo. The sole remaining defendant in this suit is CFMG, a medical provider contracted by Imperial County to provide medical and mental health care to inmates in the Imperial County Jail. *Id.* at ¶ 10. Plaintiffs allege claims against CFMG for Negligence (Second Cause of Action) and Wrongful Death (Fourth Cause of Action) and seek compensatory and punitive damages.

In January 2024, the Court granted CFMG's motion for judgment on the pleadings, finding Plaintiffs had not adequately pled their entitlement to punitive damages. Dkt. No. 174. The Court granted Plaintiffs leave to file the FAC to "add additional facts to bring their pleading into compliance with [California Civil Code §] 3294 to the extent there is a good faith basis to do so." *Id.* at 15.

Plaintiffs' FAC seeks punitive damages against CFMG under the theory that Linda Corfman ("Corfman"), CFMG's Health Services Administrator ("HSA") at the Imperial County Jail, acted despicably and showed a conscious disregard for the rights and safety of inmates, including Pichardo. The FAC alleges Corfman's decisions and priorities focused on saving CFMG money at the expense of providing care to inmates such as Pichardo, *i.e.*, putting "profits over people." Dkt. No. 175 at ¶ 71. Those allegations include:

- "Corfman knew that CFMG must pay for emergency and inpatient hospital treatment for COUNTY OF IMPERIAL jail inmate-patients, creating a disincentive for CFMG to refer inmate-patients, such as PICHARDO, off-site for necessary, emergency inpatient hospitalization or psychiatric treatment." *Id.* at ¶ 65.

- "Corfman allowed and directed Licensed Vocational Nurses (LVNs) to perform the work of Registered Nurses (RNs) and higher-level care providers, such as psychiatrists, in order to save the company money, since CFMG paid LVNs significantly less than it paid RNs and higher-level care providers." *Id.*, at ¶ 66.

- "Corfman was at all times responsible for staffing the CFMG medical and psychiatric services at ICRADF, including but not limited to ensuring appropriate staff-to-patient ratios, making sure that only properly licensed and credentialed healthcare providers provide care, and that no provider works outside his or her scope of practice or licensure." *Id.*, at ¶ 69.

- Corfman "assist[ed] with the negotiations and drafting of the medical services agreement entered into by CFMG and the COUNTY, thereby ratifying the agreed-to conditions under which the CFMG medical staff were to provide medical services to inmate-patients at the ICRADF," and she "exercised substantial discretionary authority as it pertained to the quality and number of appropriate medical staff at the ICRADF, ultimately determining the adequacy or inadequacy of healthcare that CFMG could provide to ICRADF's inmate-patients during PICHARDO's incarceration at ICRADF." *Id.*, at ¶ 70.

- "Corfman's own interests aligned with CFMG in that the decision of how many healthcare staff would ultimately be assigned to care for the inmate-patients at the ICRADF was solely an economic decision for her with the singular goal of increasing CFMG's profits at the expense of adequate healthcare for inmate-patients, which ultimately benefited [her] standing and promotability within CFMG and further enriched CFMG financially." *Id.*, at ¶ 71.

- "During PICHARDO's incarceration at ICRADF, [] Corfman used her managerial discretion to intentionally limit the healthcare staff available on a daily basis at ICRADF to such a barebones level that seriously failed to meet the needs of the inmate-patients. [Her] actions on behalf of CFMG were rooted in established company practice to place profits over people (and especially *incarcerated* people) and constituted a conscious disregard for the health and safety of the inmate-patients at ICRADF, including PICHARDO." *Id.*

- During Pichardo's incarceration at ICRADF, [] Corfman was acting in the best interest of CFMG only, refusing to authorize the use of emergency medical staff that were on standby when it became blatantly apparent to her and everyone else at ICRADF that the insufficient staffing situation at the jail would continue to result in repeated rescheduling of appointments for PICHARDO over a period of four (4) months, delaying for the sake of profits despite PICHARDO's obvious mental deterioration and acute suicidality." *Id.*, at ¶ 72.

- Corfman "refused to provide adequate staffing" at the Imperial County Jail because she "believed that ICRADF inmates, including PICHARDO, were not worthy of adequate medical care due to their confinement in ICRADF." *Id.*, at ¶ 75.

## II.

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact either by (1) presenting evidence to negate an essential element of the non-moving party's case; or (2) showing that the non-moving party

---

[1] All citations are omitted unless otherwise noted. In direct quotes, all internal quotation marks, brackets, ellipses and footnotes are omitted, and all emphasis is added, unless otherwise noted.

has failed to sufficiently establish an essential element to the non-moving party's case." *Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 545 F. Supp. 2d 1072, 1097 (S.D. Cal. 2007). "When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Id.* "[T]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

On a motion for summary judgment, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson*, 477 U.S. at 255.

B.   **Punitive Damages Under California Civil Code § 3294**

Plaintiffs seek punitive damages on their negligence claim against CFMG.[2] To obtain punitive damages under California law, a plaintiff must establish "by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code § 3294(a).

Malice includes "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code

---

[2]   Punitive damages are not available for Plaintiffs' wrongful death claim because, under California law, punitive damages are available in a wrongful death action only where there is a felony homicide conviction. *See Boeken v. Phillip Morris USA, Inc.*, 48 Cal. 4th 788, 796 (2010); Cal. Civ. Code § 3294(d).

§ 3294(c)(1). "'Conscious disregard' requires that the defendant have *actual knowledge* of the risk of harm it is creating and, in the face of that knowledge, fail to take steps it knows will reduce or eliminate the risk of harm." *Hardeman v. Monsanto, Inc.*, 997 F.3d 941, 971 (9th Cir. 2021) (emphasis in original) (quoting *Pac. Gas & Elec. Co. v. Super. Ct.*, 24 Cal. App. 5th 1150 (2018) [hereinafter *Butte Fire Cases*]); *see also Snyder v. Enter. Rent-A-Car Co. of San Francisco*, 392 F. Supp. 2d 1116, 1129 (N.D. Cal. 2005) ("[T]o justify an award of punitive damages on this basis, the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences.") (quoting *Taylor v. Super. Ct.*, 24 Cal. 3d 890, 895 (1979)).

Section 3294(c)(1)'s "reference to 'despicable' conduct seems to represent a new substantive limitation on punitive damage awards," because "'despicable' is a powerful term that refers to circumstances that are 'base,' 'vile,' or 'contemptible.'" *Butte Fire Cases*, 24 Cal. App. 5th at 1161. "As amended to include this word, the statute plainly indicates that absent an intent to injure the plaintiff, 'malice' requires more than a 'willful and conscious' disregard of the plaintiffs' interests. The additional component of 'despicable conduct' must be found." *Id.*

"Under California punitive damages law, a company simply cannot commit willful and malicious conduct – only an individual can." *Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014); *see A.N. v. Target Corp.*, No. SACV1801376DOCKESX, 2018 WL 6219935, at *4 (C.D. Cal. Oct. 12, 2018) ("Under Section 3294(b), a corporate entity is incapable of engaging in willful and malicious conduct for purposes of punitive damages liability."). Where a plaintiff seeks punitive damages against a corporation, "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b).

/ / /

Whether an individual is a managing agent does not depend on his or her title within the corporate hierarchy but whether the individual "exercised substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 575 (1999). A "corporate policy" "refer[s] to formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 715 (2009).

A plaintiff may obtain punitive damages against a corporation by either (1) demonstrating that a specific managing agent acted with malice or (2) "through evidence showing the information in the possession of the corporation and the structure of management decisionmaking . . . permits an inference that the information in fact moved upward to a point where corporate policy was formulated." *Romo v. Ford Motor Co.*, 99 Cal. App. 4th 1115, 1141 (2002), vacated on other grounds, *Ford Motor Co. v. Romo*, 538 U.S. 1028 (2003). Where a plaintiff proceeds on the latter theory, "[t]here is no requirement that the evidence establish that a particular committee or officer of the corporation acted with malice." *Id.* at 1140. Rather, "[i]t is enough if the evidence permits a clear and convincing inference that within the corporate hierarchy authorized persons acted despicably in willful and conscious disregard of the rights or safety of others." *Id.* at 1141 (citing Cal. Civ. Code § 3294(c)(1)).

"Clear and convincing evidence" "requires a finding of high probability so clear as to leave no substantial doubt, and sufficiently strong to command the unhesitating assent of every reasonable mind." *Butte Fire Cases*, 24 Cal. App. 5th at 1160. "While this evidentiary burden is high, it is not insurmountable," and a plaintiff "need not produce a smoking memorandum signed by the CEO and Board of Directors." *Willis v. Buffalo Pumps, Inc.*, 34 F. Supp. 3d 1117, 1133 (S.D. Cal. 2014). But the plaintiff "must nevertheless present evidence that permits a clear and convincing inference that within the corporate hierarchy authorized persons acted despicably in willful and conscious disregard of the rights or safety of others." *Butte Fire Cases*, 24 Cal. App. 5th at 1173.

///

"[S]ummary judgment on the issue of punitive damages is proper only when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." *Reeb v. Amerigas Propane, Inc.*, No. 316CV02565AJBKSC, 2018 WL 11483018, at *8 (S.D. Cal. Nov. 28, 2018); *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1120 (2001) ("on a motion for summary adjudication with respect to a punitive damages claim, the higher evidentiary standard applies"). However, "[w]here there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not, and indeed should not, submit the issue of punitive damages to the jury." *Butte Fire Cases*, 24 Cal. App. 5th at 1176.

## III.
## DISCUSSION

CFMG contends it is entitled to partial summary judgment on the issue of punitive damages because the undisputed material facts demonstrate Corfman was not a managing agent of CFMG, and there is an absence of evidence from which a reasonable trier of fact, applying the clear and convincing standard of proof, could find that she acted with malice as alleged in the FAC. Plaintiffs contend there are disputed issues of fact on both issues that preclude summary judgment.

### A. Corfman's Role at CFMG

The parties dispute the scope of Corfman's authority as the HSA at the Imperial Couty Jail and the existence of a triable issue of fact as to whether she functioned as a managing agent for CFMG. The disputed facts include whether Corfman had authority to make changes to CFMG policies as applied to the Imperial County Jail and whether she was asked for her input on appropriate CFMG staffing levels at the Jail. Plaintiffs' Statement of Genuine Disputes ("PSGD"), Dkt. No. 193-1, Nos. 22-26, 33. The parties further dispute whether Corfman had any direct involvement with Pichardo's care, with Plaintiffs asserting that her managerial role and policy responsibilities indirectly affected the care provided to Pichardo and ultimately led to his death. PSGD No. 38.

These disputed facts pertain to the determination whether Corfman was a managing agent under Civil Code § 3294(b), such that her conduct could subject CFMG to punitive damages. The Court need not address this issue because, as explained below, even assuming the existence of a triable issue of material fact as to whether Corfman was a managing agent, "no reasonable jury could find [Plaintiffs'] evidence to be clear and convincing proof of malice, fraud or oppression." *Reeb*, 2018 WL 11483018, at *8.

### B.   Corfman's Conduct

The parties agree that, as the HSA at the Imperial County Jail, Corfman supervised certain medical staff, including registered nurses, licensed vocational nurses and medical assistants. PSGD No. 21. She did not supervise psychiatrists or other physicians. *Id.*

Corfman did not participate in the contracting process between CFMG and Imperial County pursuant to which CFMG provided healthcare at the Imperial County Jail. PSGD Nos. 27-29. As such, she was not involved in formulating the staffing matrix that was part of the contract and that required her to hire nurses and other medical staff only as authorized by the matrix. PSGD Nos. 32, 36.

Corfman "was aware of the necessity for additional medical and mental health care staffing at the Imperial County Jail," and she "brought the inadequate staffing issue to the attention of individuals" at CFMG and the Jail. PSGD Nos. 34-35. In her own words, Corfman was a "squeaky wheel" advocating for more healthcare staff at the Jail. PSGD No. 37. Corfman testified at her deposition, in relevant part:

> Q.   And then you said earlier you had problems with the staffing matrix, you wanted more staff at the Imperial County Jail; right?
>
> A.   I did want to improve our staffing levels.
>
> Q.   And so you realized that this was a serious problem, that there was not enough staffing at Imperial County Jail; right?
>
> A.   Yes.

> Q. And you told [CFMG] corporate that, "we need to increase more staff so we can make sure that the patients are safe?"
>
> A. Yes.
>
> Q. What steps did you take to advocate for more staff so that the patients could be well cared for at Imperial County Jail?
>
> A. Well, I sent e-mails, phone calls, discussions during meetings, discussions during our quarterly meetings. I don't have specific dates or times or specific meetings that I can quote this information to you, but I – as I mentioned earlier, I was a squeaky wheel and I was working to get more staff, more psychiatrist time, more help in general for the jail.

Dkt. No. 192-4 at 78-79.

The foregoing evidence is inconsistent with the FAC's allegations that Corfman put "profits over people" by refusing to hire an adequate number of medical staff and denying needed medical care to Imperial County Jail inmates to minimize CFMG's expenditures. Given that CFMG has pointed out the absence of evidence to support a finding that Corfman acted despicably and with malice, Plaintiffs must go beyond the FAC's allegations and "provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076.

Plaintiffs' opposition to CFMG's motion largely abandons the FAC's allegations against Corfman. For example, Plaintiffs present no evidence that any staff member ever recommended sending Pichardo outside the Imperial County Jail for further care or that Corfman denied any such request. *Compare* Dkt. No. 175 at ¶ 65. Similarly, Plaintiffs present no evidence in support of the FAC's allegation that Corfman instructed LVNs to perform the duties of RNs to save CFMG money. Indeed, the record directly contradicts this allegation, as Corfman testified that she never instructed anyone to act outside the scope of their practice because it would put the practitioner, the patient, the County, CFMG, and even Corfman at risk. Dkt. No. 194-4 at 72-73.

///

The undisputed facts establish that Corfman had no role in negotiating or drafting the contract between CFMG and Imperial County, including the staffing matrix, and that Corfman's hiring authority was limited by that staffing matrix. These facts do not support the FAC's allegations that Corfman was "responsible for staffing the CFMG medical and psychiatric services" at the Jail and "exercised substantial discretionary authority regarding the quality and number of appropriate medical staff" at the Jail. Dkt. No. 175 at ¶¶ 69-70. And Plaintiffs have proffered no additional evidence that might support their allegations of malicious conduct by Corfman.

Finally, Plaintiffs present no evidence supporting the FAC's allegation that Corfman "used her managerial discretion to intentionally limit the healthcare staff available to individuals at [the Imperial Couty Jail] to such a barebones level that seriously failed to meet the needs of the inmate-patients." *Id.* at ¶ 71. To the contrary, the evidence reflects that Corfman's hiring authority was limited to the staffing matrix negotiated by Imperial County and CFMG. PSGD Nos. 27-32. The undisputed evidence demonstrates that Corfman was required to operate under that matrix and that, even within the matrix, her hiring authority did not include physicians. PSGD No. 36. Finally, Corfman testified that she actively advocated for additional staff for the Jail, reflecting her efforts to address staffing issues. PSGD No. 37.

Plaintiffs contend Corfman "admitted that she did not follow the CFMG [medication] refusal policy." PSGD No. 78. But the portion of Corfman's deposition upon which Plaintiffs rely does not support this assertion. Instead, the deposition excerpts relate to documentation by other Jail healthcare staff (not Corfman) of medication refusals, and Corfman's opinion as to whether that documentation complied with CFMG policies. Dkt. No. 193 at 160-62. This testimony does not bear on whether Corfman herself followed CFMG's medication refusal policy (which has not been placed in the record). Even assuming there was evidence that Corfman did not follow one or more CFMG policies, Plaintiffs have not adduced evidence that would allow a reasonable trier of fact to conclude that any such failures constituted despicable conduct. *See Butte Fire Cases*, 24 Cal. App.

5th at 1161 ("'despicable' is a powerful term that refers to circumstances that are 'base,' 'vile,' or 'contemptible'").

### B. Inferring Corporate Malice

In granting CFMG's prior motion for judgment on the pleadings, the Court set forth the bases for liability under Civil Code § 3294, including the requirement that Plaintiffs allege malice on the part of a corporate officer, director or managing agent. Dkt. No. 174 at 8-10. The Order also explained that malice could be inferred "if the evidence permits a clear and convincing inference that within the corporate hierarchy authorized personas acted despicably," *id.* at 12 (citing *Butte Fire Cases*, 24 Cal. App. 5th at 1172), but that Plaintiffs' operative complaint did not allege facts to support such a theory. As such, the Court "permitted a **final** amendment to [Plaintiffs'] complaint for the express and sole purpose of correcting the deficiencies identified in this Order," including "add[ing] additional facts to bring their pleading into compliance with Section 3294 to the extent there is a good faith basis to do so." *Id.* at 15.

The FAC's allegations focus on Corfman's conduct. Plaintiffs do not allege a theory of punitive damages liability based on an inference of "corporate malice" as described in *Butte Fire Cases* and *Romo*. *See Romo,* 99 Cal. App. 4th at 1141 (plaintiff may establish corporate malice "through evidence showing the information in the possession of the corporation and the structure of management decisionmaking that permits an inference that the information in fact moved upward to a point where corporate policy was formulated"). This matters because "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). "While a summary judgment motion does go beyond the pleadings in the sense that it tests the sufficiency of the evidence to support the allegations of the complaint, those allegations still serve to frame—and limit—the issues." *Fox v. Good Samaritan L.P.*, 801 F. Supp. 2d 883, 896 (N.D. Cal. 2010). Having elected to seek punitive damages on the theory that Corfman acted despicably and with malice, Plaintiffs cannot now assert a new theory of

punitive damages liability based on the CFMG's "corporate malice" more generally. *Coleman*, 232 F.3d at 1293 ("adding a new theory of liability at the summary judgment stage would prejudice the defendant").

Even if the FAC had alleged a theory of "corporate malice," Plaintiffs' opposition does not proffer evidence that, viewed in a light most favorable to Plaintiffs, would allow a reasonable jury to make "a clear and convincing inference that within the corporate hierarchy authorized persons acted despicably in willful and conscious disregard of the rights or safety of others." *Romo*, 99 Cal. App. 4th at 1141. For example, Plaintiffs provide no evidence regarding how CFMG negotiated the staffing matrix that limited Corfman's ability to hire healthcare staff for the Imperial County Jail, or how Corfman's requests for additional staffing were handled by the CFMG corporate hierarchy in a manner that could lead a reasonable jury to infer that CFMG did put "profits over people," as Plaintiffs allege. To defeat summary judgment, Plaintiffs "must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. They have not done so with respect to their claim for punitive damages.

## IV.
## CONCLUSION

For the foregoing reasons, CFMG's Motion for Partial Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Dated: August 9, 2024

*David Leshner*

Hon. David D. Leshner
United States Magistrate Judge